**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                 **Case No. CR 09-2982 JC**

**JAMES OLIVER REESE,**

      **Defendant.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence (Doc. 30), filed November 17, 2009 ("Motion").  Having read the parties' briefs and listened to testimony and oral argument at the hearing on this matter held January 6, 2010, I find the Motion is not well taken and should be DENIED.

**I.      BACKGROUND**

Defendant was indicted October 8, 2009 on three counts of possession of firearms in violation of 18 U.S.C. § 922(g)(8), which makes it a crime for persons subject to restraining orders finding that they represent a credible threat to intimate partners to possess firearms. *Redacted Indictment* (Doc. 15).  The restraining order was issued by the Hawaii state court as part of Defendant's divorce from his first wife, Jennifer Reese May, finalized in 2004 ("Hawaii Order").  Many of the guns at issue were initially discovered at Defendant's residence by New Mexico State Police Officer Aaron Hammond on June 27, 2009 in the course of Officer Hammond's response to a report of domestic violence by Defendant's current wife, Danielle Boucher-Reese.  A total of thirty-two firearms were seized by ATF officers on July 1, 2009 pursuant to their search warrants for Defendant's home and place of business in Milan, New Mexico.

In the instant Motion, Defendant argues that Officer Hammond lacked the legal authority to enter his residence on June 27, 2009 and therefore all evidence obtained at his home should be suppressed.  *Motion* at 1.  Defendant further contends that his statements to police after the illegal search of his home should also be suppressed as "the fruit of the poisonous tree."  *Motion* at 10 (quoting *Wong Sun v. United States*, 371 U.S. 471, 491 (1963).

## II.    FINDINGS OF FACT

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to "state its essential findings on the record" when there are factual issues involved in deciding a pre-trial motion.  FED.R.CRIM.P. 12(d).  I find the following facts relevant to the instant Motion:

A.    On June 27, 2009, Patrolman Aaron Hammond of the New Mexico State Police took a report of domestic violence occurring the prior evening from Defendant's wife, Danielle Boucher-Reese.

B.    Mrs. Boucher-Reese advised Officer Hammond that she had left her residence as 20 Gail Drive in Milan, New Mexico the night of June 26, 2007 with her older son, but that Defendant refused to allow her to take her two-year-old son with her. She further advised that Defendant had a number of firearms in the residence in violation of the Hawaii Order, and specifically consented to Officer Hammond's search of the residence.

C.    Officer Hammond traveled to 20 Gail Road with the primary purpose of verifying the safety of Mrs. Boucher-Reese's two-year-old son as well as her 17-year-old step-daughter.

D.    When Defendant answered the door, he admitted to Officer Hammond that he had

several firearms inside, both before and after his *Miranda* rights were read to him.

E.    After he was arrested, Defendant further admitted he knew the contents of the Hawaii Order.

F.    Upon entry and sweep of the residence at 20 Gail Road, Officer Hammond observed a gun, a gun safe, and several bags of different ammunition.

G.    Officer Hammond subsequently photographed parts of the house, including the gun safe, which was opened by Mrs. Boucher-Reese, and the multiple firearms contained inside.  Officer Hammond also made a written inventory of the firearms found in the residence.

H.    Officer Hammond also observed two firearms and several additional bags of ammunition in Defendant's vehicle, which was opened at Defendant's request by Defendant's business associate, Eddie Tan.

I.    Although Mrs. Boucher-Reese removed clothing and personal items from the residence on June 27, 2009, Officer Hammond seized nothing.

J.    Defendant, who was secured in handcuffs in the back of Officer Hammond's vehicle throughout the search on June 27, 2009, did not inform Officer Hammond that he declined to consent to the search of the residence.

K.    During his booking at the police station, Officer Hammond complimented Defendant on his collection of firearms and Defendant thanked him, stating that he'd been collecting them his entire life and had worked hard for them.

L.    Alcohol Tobacco Firearms Agent Brandon Garcia became involved in this matter after receiving phone calls from Mrs. Boucher-Reese, her mother, and

Defendant's first wife, Jennifer May, who were all concerned about the safety of Mrs. Boucher-Reese after Defendant bonded out of jail.

M.    Agent Garcia drafted an affidavit in support of search warrants to be executed on Defendant's residence and business.  In addition to attaching Officer Hammond's inventory of firearms found in Defendant's residence, Agent Garcia's affidavit included the fact that Defendant admitted having firearms in the residence after he was advised of his *Miranda* rights.  The affidavit also included Officer Hammond's observation of firearms and ammunition inside of Defendant's vehicle when it was opened at Defendant's request by Mr. Tan.

## III.    DISCUSSION/CONCLUSIONS OF LAW

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

Warrantless searches are permissible where an individual voluntarily consents. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 1041, 36 L.Ed.2d 854 (1973).  Consent may be given by the owner of the property to be searched or by anyone with actual or apparent authority to consent to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 181-82, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).  In the case of co-tenants, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 39

4

L.Ed.2d 242 (1974).  But consent of one resident is not sufficient to permit a warrantless search where a cotenant is present and expressly refuses consent to the search.  *Georgia v. Randolph*, 547 U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 297 (2006) (holding that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable to him on the basis of consent given to police by another resident").

### A.     Danielle Boucher-Reese Had Authority to Consent to the Search

Actual authority to consent to search of a premises requires "either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it."  *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir.1999).  "The apparent authority inquiry is an objective one: we must determine whether 'the facts available to the officer at the moment ... warrant a man of reasonable caution [to believe] that the consenting authority had authority over the premises[.]'" *United States v. Cos*, 498 F.3d 1115, 1128 (10th Cir. 2007) (quoting *Rodriguez*, 497 U.S. at 188 (internal quotation marks and citations omitted)).

Here, Defendant claims there was no joint access or control because Danielle Boucher-Reese had left the home the previous night, and Defendant had changed the locks that morning. *Motion* at 2.  The Government argues the marital relationship between Mrs. Boucher-Reese and Defendant created a presumption that she had control over the property and therefore actual authority to consent to the search.  *Resp.* at 7 (citing *Rith* at 1330).  At a minimum, the Government argues Mrs. Boucher-Reese had apparent authority to consent to the search in that she identified the home in question as her residence, where she had lived with her husband for over a year, and that she knew there were multiple firearms in the residence.  *Resp.* at 7-8.

5

Defendant contests that Officer Hammond could reasonably have believed that Mrs. Boucher-Reese had authority to consent to a search because Officer Hammond was aware that Mrs. Boucher-Reese had left the house the prior evening and that Defendant had changed the locks.

Considering these arguments together with the testimony of Officer Hammond, who stated that he believed Mrs. Boucher-Reese had left home rather than been kicked out and that it was his impression was that the spouses were "upset" with each other, I cannot conclude it was unreasonable to believe that Danielle Boucher-Reese had authority to consent to a search of the residence at 20 Gail Road.  Even if Officer Hammond's belief in her authority was incorrect, it was reasonable given her relationship to the Defendant and the fact that she identified the premises in question as her "current" residence.

### B.      Defendant Did Not Refuse Consent

In order to trigger the rule in *Georgia v. Randolph*, and overcome the consent already given by his wife, Defendant must show that he expressly refused consent to search the residence at 20 Gail Road.  547 U.S. 103 at 120.  It is undisputed that Defendant said he would prefer to speak on the front porch when Officer Hammond suggested that they speak inside the residence. Otherwise, Defendant relies solely on the testimony of his father, who allegedly overheard Defendant telling Officer Hammond that the house and everything in it belonged to his father. Even if I found the testimony of Defendant's father to be credible, which I do not[1], there is no evidence that Defendant ever expressly refused consent to search the premises and no evidence

---

[1]Aside from his relationship to the Defendant, Oliver Reese repeatedly testified that the firearms found at the residence at 20 Gail Road belonged to him.  This contradicts the sworn testimony of Officer Hammond indicating that Defendant admitted the collection of firearms was his and showed pride in the same.  Mr. Oliver Reese's testimony that all of the firearms belonged to him rather than his son is not credible.

to support application of the *Randolph* rule.  Again, Officer Hammond reasonably believed Mrs.

Boucher-Reese had authority to consent to the search of the premises.  I find nothing in

Defendant's demeanor to indicate "express refusal of consent" such that Officer Hammond's

reliance upon Mrs. Boucher-Reese's consent would have become unreasonable.

### C.     Search Warrants Executed July 1, 2009 Were Valid Even Excluding Evidence Obtained From the Residence on June 27, 2009

Separate and apart from the question of consent, neither the firearms seized on July 1,

2009 nor Defendant's post-arrest statements can be suppressed as the fruits of an illegal search.

Probable cause supports the warrants executed on July 1, 2009 even absent information obtained

during the June 27, 2009 search.  ATF Agent Garcia's affidavit included Defendant's pre-search

admission that he had firearms in the residence as well as Officer Hammond's observation of

firearms in Defendant's vehicle, which was opened at Defendant's request by Mr. Tan.  These

facts, together with the information concerning Mrs. Boucher-Reese's concern for her safety,

sufficiently support probable cause for the warrants to be executed on July 1, 2009.

## IV.     CONCLUSION

Finding that Mrs. Boucher-Reese had at least apparent authority to consent to the search

of the residence at 20 Gail Road on June 27, 2009, that Defendant never refused consent to

search the residence so as to trigger the rule in *Georgia v. Randolph*, and, finally, that the search

warrants executed July 1, 2009 were lawful and supported by probable cause, Defendant's

Motion to Suppress Evidence (Doc. 30), filed November 17, 2009, is **DENIED**.

DATED:      January 13, 2010.

s/John Edwards Conway

_____

7

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Louis E. Valencia, AUSA
Albuquerque, NM

Counsel for Defendant:

Robert Jason Bowles, Esq.
William C. Marchiondo, Esq.
Albuquerque, NM