IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No. 09-CR-2982 JC

JAMES OLIVER REESE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant James Oliver Reese's Motion to Dismiss (Doc. 23), filed November 9, 2009 ("Motion"). Having reviewed the parties' submissions, the relevant case law, and having heard oral argument on January 6, 2010, I find the Motion is well-taken and should be granted.

**I.  BACKGROUND**

Defendant's divorce from Jennifer Reese, who is now remarried and known as Jennifer May, was finalized May 11, 2005 in Hawaii. On February 23, 2005, the Hawaii Court entered an Order of Protection pursuant to Jennifer Reese's Ex Parte Petition for a Temporary Restraining Order as part of the divorce. The Order of Protection provides that Defendant agreed to the restraining order but denied Jennifer Reese's allegations of abuse. *Motion* at Ex. C, p. 1. As a result, no finding of abuse was made. *Id.* The Order of Protection further prohibits Defendant "from possessing, controlling, or transferring ownership of any firearm, ammunition, firearm permit or license for the duration of this Order or extension thereof." *Id.* at 4.

On March 17, 2005, the Order of Protection was amended by Defendant's attorney at the time to provide that Defendant was permitted "unsupervised and immediate telephone contact with the parties' minor children." *Motion* at Ex. E, p. 1. The last sentence of the amended order,

handwritten by Defendant's attorney at the time, provides that "[t]he order for protection shall expire in 50 years or until either party modifies the same." *Id.* at 2.  Contrary to this language, Defendant contends it was his understanding that the Order would last for six months. *Motion* at Ex. F, ¶ 3.

On June 27, 2009, the New Mexico State Police found approximately 18 firearms at Defendant's residence, including two handguns in Defendant's vehicle, while responding to a domestic dispute involving Defendant and his new wife, Danielle Reese. *Motion* at 2; *Resp.* at 3. A total of 33 firearms were seized from Defendant's place of business pursuant to a search warrant executed by the ATF on July 1, 2009.  Defendant is being prosecuted for possessing a firearm in violation of 18 U.S.C. § 922(g)(8). *Redacted Indictment* (Doc. 15).  This statute provides in relevant part:

> (g) It shall be unlawful for any person—
>    (8) who is subject to a court order that—
>        (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate,
>        (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>        (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>            (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury
>    to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Defendant challenges the constitutionality of 18 U.S.C. § 922(g)(8) both on its face and

as it is applied to him. In support of this second argument, Defendant focuses mainly on the fact that the Order of Protection is not temporary but is, by virtue of its 50-year term, effectively a lifetime ban on his right to bear arms. Although Defendant initially mounted several collateral attacks to the validity of the Protection Order in his Motion, these arguments were abandoned in his Reply Brief. *Reply* at 1 (limiting asserted grounds for dismissal of indictment to (1) unconstitutionality § 922(g)(8) on its face and (2) unconstitutionality of § 922(g)(8) as applied to Defendant).

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED.R.CRIM.P. 12(b)(2). A party must raise before trial "a motion [that] alleged a defect in the indictment or information--but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense[.]" FED.R.CRIM.P. 12(b)(3).

When challenging the constitutionality of a statute, a defendant may challenge the statute either on its face, or as the statute is applied to a defendant's particular circumstances. "A facial challenge is a head-on attack on the legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications. An as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007), *vacated on other grounds*, *Pruitt v. United States*, 128 S.Ct. 1869, 170 L.Ed.2d 741 (2008).

Defendant "may only succeed in a facial challenge to the constitutionality of a statute by 'establishing that no set of circumstances exists under which the Act would be valid.'" *Washington State Grange v. Washington State Republican Party*, --- U.S. ----, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).  Acknowledging criticism of the *Salerno* standard, including criticism from within the Supreme Court, the Court has set forward an alternative standard, noting that "all [Members of the Court] agree that a facial challenge must fail where the statute has a "'plainly legitimate sweep.'" *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 739-740, and n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (STEVENS, J., concurring in judgments)).

## III.   DISCUSSION

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed."  In *United States v. Heller*, the Supreme Court ruled that the meaning of the operative clause of the Second Amendment is to "guarantee the individual right to possess and carry weapons in case of confrontation." ___ U.S. ___, 128 S.Ct. 2783, 2797, 171 L.Ed.2d 637 (2008).  The Tenth Circuit has recognized that *Heller* held that "the Second Amendment provides an individual with a right to possess and use a handgun for lawful purposes within the home." *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009).  The right is individual in nature and unrelated to a person's service in any kind of armed force.  *Heller*, 128 S.Ct. at 2797-2816.

It is not, however, unlimited.  The Supreme Court specifically noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such

as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 2817.  Further, the Supreme Court noted that this list of "presumptively lawful" limitations was not meant to be exhaustive. *Id.* at 2817, n.26.

The Tenth Circuit has relied on this dicta from *Heller* to find that 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by convicted felons, is constitutional post-*Heller*. *McCane*, 573 F.3d at 1047 (quoting *Heller*, 128 S.Ct. at 2817).  *See also United States v. Nolan*, No. 08-6246, 2009 WL 2488159 (10th Cir., Aug. 17, 2009) (same); *United States v. Gieswein*, No. 08-6113, 2009 WL 2837433 at *2 (10th Cir., Sept. 4, 2009) (declining to consider further argument that § 922(g)(1) is unconstitutional in light of *Heller* because of the Tenth Circuit's prior holding in *McCane*).

Other circuit courts of appeal have similarly followed the dicta in *Heller* and upheld § 922(g)(1) as constitutional without significant analysis of the statute.  *See, e.g., United States v. Anderson*, 559 F.3d 348, 352 & n.6 (5th Cir. 2009).

Where other provisions of § 922 are at issue, provisions that are not specifically mentioned by the Supreme Court in the *Heller* dicta, a more complete analysis is in order.[1]  For instance, the Seventh Circuit criticized the government's reliance on the *Heller* dicta in *United States v. Skoien*, 587 F.3d 803, 805 (7th Cir. 2009) ("*Heller* held that the Second Amendment secures an individual natural right to possess firearms for self-defense; the opinion's reference to

---

[1]Circuit Judge Tymkovich laments the lack of analysis even of the felon in possession law.  In *McCane*, he "wonder[s] whether Second Amendment law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases." *McCane*, 573 F.3d at 1050 (Tymkovich, Circuit Judge, concurring).  Indeed, if lower courts were free to consider the constitutionality of the felon in possession law, Tymkovich notes that § 922(g)(1) may not survive scrutiny where the underlying felony is non-violent. *Id.* at 1049.

exceptions cannot be read to relieve the government of its burden of justifying laws that restrict Second Amendment rights"). The Seventh Circuit ultimately vacated and remanded the defendant's conviction pursuant to § 922(g)(9) for possessing firearms after a conviction for misdemeanor domestic violence. *Id.* at 806. Indeed, the *Heller* dicta may not even apply to § 922(g)(8), which was enacted in 1996—thus, it is hardly a "longstanding prohibition[] on the possession of firearms." *See, e.g., United States v. Luedtke*, 589 F.Supp.2d 1018, 1021 (E.D.Wis. 2008).

I find that the Seventh Circuit's analytical framework in *Skoien* is both legally sound and appropriate for resolving Defendant's challenge to the constitutionality of § 922(g)(8). Therefore, the constitutionality of § 922(g)(8) will be determined "depending upon the government's ability to satisfy whatever level of means-end scrutiny is held to apply." *Id.* at 809. In *Skoien*, for example, intermediate scrutiny was applied because the defendant's possession of firearms was for the purpose of hunting and "the core right of self-defense identified in *Heller* [wa]s not implicated." *Id.* at 805.

### A.      Section 922(g)(8) is Constitutional On Its Face

Other federal district courts have considered the constitutionality of § 922(g)(8) post-*Heller* and found it constitutional. Judge D. Brock Hornby of the Federal District of Maine applied roughly the same analysis as the Seventh Circuit in *Skoien*, distinguishing § 922(g)(8) from the outright ban on firearms at issue in *Heller*. *United States v. Knight*, 574 F.Supp.2d 224, 226 (D.Maine 2008) ("the prohibition lasts only as long as the underlying state court order is in effect"). Holding that reducing domestic violence is a compelling government interest, the court found that the temporary prohibition of firearms in § 922(g)(8) was narrowly tailored to serve

6

that interest.

Although he did not apply the Seventh Circuit's analysis in *Skoien*, Judge Lynn Adelman of the Eastern District of Wisconsin held that § 922(g)(8) was constitutional because it "represent[ed] the *type[]* of regulation[] that pass[ed] constitutional muster." *Luedtke*, 589 F.Supp.2d at 1021 (emphasis in original).  Judge Adelman noted the United States' history of barring individuals from access to weapons "based on the societal determination that such individuals pose a particular danger."  *Id.*  At the time of the Lautenberg Amendment to the Gun Control Act, which gave rise to § 922(g)(8), Judge Adelman referenced Congressional evidence that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death" and that there were 150,000 instances of household violence involving firearms.  *Id.* at 1022 (quoting from 142 Cong.Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Murray) and 142 Cong.Rec. S8831 (daily ed. July 25, 1996)(statement of Sen. Lautenberg), respectively).  Judge Adelman rejected the defendant's argument that § 922(g)(8) was unconstitutional post-*Heller*, stating that "[n]othing in *Heller* suggests that Congress may not—based on further experience and study—close such loopholes, adding to the list of dangerous individuals historically barred from firearm possession." *Id.* at 1023.

Though Judge Adelman did not formally apply any means-end analysis in *Luedtke*, he indicated that § 922(g)(8) would nonetheless survive strict scrutiny. *Id.* at 1025.  "Reducing domestic violence is a compelling government interest, and 922(g)(8)'s temporary prohibition, while the state court order is outstanding, is narrowly tailored to that compelling interest." *Id.* (quoting *United States v. Erwin*, No 1:07-CR-556, 2008 WL 4534058, at *2 (N.D.N.Y. Oct. 6, 2008) (internal citations omitted)).

These decisions demonstrate "the plainly legitimate sweep" of § 922(g)(8) and show there are indeed circumstances in which the statute's limitation on possession of firearms is narrowly tailored and, therefore, constitutionally valid.

### B. Section 922(g)(8) As Applied to Defendant

*Knight* and *Luedtke* also illustrate how the statute is unconstitutional as applied to Defendant. In contrast to the restraining orders at issue in *Knight* and *Luedtke*, the 50-year Order of Protection in the present case is less narrowly tailored to serve the governmental interest of reducing domestic violence. The maximum duration of the Wisconsin order at issue in *Luedtke* was only four years. 589 F.Supp.2d at 1024.

Beyond the length of the Order in the present case, there is also the fact that Jennifer May, whom the Order was intended to protect, lives across the United States in Maryland, and the two, who were divorced four years ago and who are both remarried, have no in-person contact. The Order in the present case is simply not narrowly tailored to achieve the compelling governmental purpose of preventing domestic violence between Defendant and Jennifer May.

### IV. CONCLUSION

Finding that the statute, 18 U.S.C. § 922(g)(8), under which Defendant is indicted is unconstitutional as applied to Defendant, the Court GRANTS Defendant's Motion to Dismiss (Doc. 23), filed November 9, 2009. All three counts pending against Defendant will be dismissed.

DATED:  January 12, 2010.

s/John Edwards Conway

———————————————————
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Louis E. Valencia, AUSA
Albuquerque, NM

Counsel for Defendant:

Robert Jason Bowles, Esq.
William C. Marchiondo, Esq.
Albuquerque, NM